22-27-22 Brinkmann v. Town of Southhold We'll wait for our counsel to come up to the front of the room. Let's just wait for the door to close. Okay, Mr. Redfern. Good morning, Your Honors, and may it please the Court. I'm Jeff Redfern from the Institute for Justice. I'm here on behalf of the Brinkmann appellants. My clients want to operate a lawful business on land that they owned, complies with every regulation, they've paid every fee, they've jumped through every hoop, and the Town of Southhold has run out of legal ways of stopping them from doing so. So the town turned to pretextual condemnation. The problem is that every single court that has reviewed facts like these have agreed that this is unconstitutional. There's no path to affirming the district court that doesn't create a major split of authority, including with the Connecticut Supreme Court. The evidence that we have of pretext in this case is overwhelming. My clients purchased this commercially zoned property right in the middle of town. What if we, I hate to interrupt you at the outset, but you're saying that the evidence of pretext is very strong, and I'd be inclined to agree with you. The question becomes whether a town can exercise eminent domain pretextually because they prefer a park to a business that would have 80 parking spaces and so on and might be inappropriate in a towny neighborhood, whatever. In other words, if it is a pretext, but the result is a park, and that is a legitimate purpose for eminent domain, why does the pretext matter? Well, Your Honor, I actually think that my friend and I are in agreement here. They acknowledge that there is such a thing as a pretext claim where we look to purpose and where the fact that something is going to be devoted to a traditional public use is not dispositive. The real dispute is just about how broad the pretext doctrine is. Do you agree that it is going to be devoted to a traditional public use? You say that they're lying about wanting to build a park. Does that mean that your allegation is that they don't intend to build the park, or they're going to build the park, but they don't really want it? The real purpose is to stop the Brinkmans from building their store? Your Honor, our allegation is the latter, that it's the purpose that matters, not whether they actually— We don't, Your Honor. That's right, and that's what cases have held going back over 50 years. I think the Supreme Court recognized this pretext doctrine in Kelo, and it was talking about purpose. It wasn't talking about whether the property will, in fact, be used in the way that the condemning authority asserts that it's going to be used. I suppose you recognize the difference between purpose and motive. It might be that their motive is to stop the Brinkmans from building the store because they don't like it, but if they actually are going to do something that's a public use with the property, why shouldn't we say that that complies with the Tangains Clause? Well, the short answer is that I don't think there's any path to doing that that doesn't depart from decades and decades of precedent. I think that the Supreme Court— I'm asking you just why. What's the reasoning for it? So if the Tangains Clause says you can take for a public use, and you're saying you don't dispute they actually are going to devote the property to a public use, why doesn't that comply with the Tangains Clause? What's the argument for that? Sure. I've got a few answers for that, Your Honor. First, the town of South Hold has broad police power authority that we're not challenging to regulate land use and development. I think their position, though, is that even when that authority is exhausted, there's no residuum left to the property owner. The property owner who runs this gauntlet, who proves that their proposed use complies with a 500-page comprehensive plan, meets all the zoning requirements, goes back and forth with the building department for years, that property owner still doesn't get to do what he wants with his property because they have a final unreviewable veto over particular owners and particular uses. I think that leads to tremendous possibility of abuse, not just cases like this where they're actually taking it, but if this were to become the law and this court were to establish that local governments have this power, then they often wouldn't have to condemn property. They could simply threaten to do it, and I've actually seen this in my own practice. We had a case in southern Indiana. So it's kind of like an anti-circumvention measure. It's kind of like how we read unconstitutional conditions into the Constitution. I think it has a flavor of that, Your Honor. The government can't do indirectly what it can't do directly, so they don't have the power to just take or stop the building through some other means. They can't use the eminent domain power to accomplish that result. I think that's exactly right, Your Honor. I think, like I said, the police power is broad. They have broad authority. So why wouldn't they have the power to do it, to stop it through other means? Could the town not have decided to disapprove the site plan or change the zoning for that area? Why is it that they were prohibited from stopping the development through other means and so had to resort to the eminent domain? The short answer is that if they could have, they would have. They put up so many roadblocks. They tried everything they could to stop this, and eminent domain was really their last ditch after they were losing in state court. Would the town planning board have been obliged to approve the site plan and the development? I believe so, Your Honor, because all of this body of land use regulation and zoning law that we have, it has certain safeguards built into it. So spot zoning is illegal. They couldn't spot zone this differently from everything else surrounding it, and it's in the middle of the commercial area. Also, the criteria have to be objective. It doesn't mean that there aren't sometimes judgment calls, but these are things that can be known in advance. So a property owner can look at the zoning code and say, I can comply with all of these. I have the right kind of business. I have the right kind of frontage. I'm hiring a local architect. And if I comply with all of these, if I jump through these hoops, then I get to build my store. Finally, Your Honor, I'd just like to emphasize that there's some language in my friend's brief here suggesting that our rule here is radical. It's not radical. It's been the law going back 50 years. These cases that we cite, they don't even draw dissents. They're widely cited. They're in the treatises. Everyone knows them. And the rule has proven predictable. It's proven administrable. There hasn't been a flood of litigation, as the Massachusetts SJC noted in Pheasant Ridge. These are unusual facts. It doesn't happen that often. But when it does, courts have had no trouble discerning that there's an improper purpose here. And the principle that's in these cases is the idea that if the purpose of the town in taking the proper governmental authority, in taking the property, is to stop the lawful but disfavored use of somebody's private property, that is an invalidation. That's correct, Your Honor. So can I ask, so why is that the right principle? So if the town has just decided that we think that the hardware store is going to change the character of the town or is bad for the town for some reason, and so we're going to stop it, why isn't that a public purpose? Because, Your Honor, the police power has limits. There is this entire body of law controlling what towns can do to control development. And I think that that argument is essentially that towns have plenary authority over all property within their borders. We think they have very broad authority. But if, you know, this property was not on the 957 property list of properties that have been targeted for possible acquisition for parks and open space. That's remarkable. It's a small town. It didn't even make the top 1,000. They paid for this $30,000 municipal impact survey. One of the purposes of this survey is to assess. I guess you would also say that if, in fact, the town is subject to constraints on the police power that limit their ability to disapprove the site plan and change the zoning through spot zoning and so on, they shouldn't be able to use the, it's an abuse of the eminent domain power to circumvent those restrictions on its authority, right? That goes back to your anti-circumvention. That's right. And I think that's implicit in some of the earlier cases that use the term bad faith rather than pretext that the concepts have merged since then. But I think that's exactly right, Your Honor. All right, so we recognized that a long time ago, bad faith. You know, it does seem like that phrase was pretty common in a lot of the early cases about takings. Did Kelo and some of our more recent cases change that? No, Your Honor. I think that what Kelo was doing, it was approving a preexisting doctrine that had been around for a long time. It cited a pretext case that said, we're not challenging any of this. It wasn't breaking new ground, and it wasn't overruling any of those, certainly. And I think that this Court's decision in Goldstein is also pretty helpful because it said nothing about this kind of a pretext theory being wrong. It just said that the allegations were insufficient. And we don't dispute that. I think that's a pretty reasonable... Really, Goldstein does talk over and over again about how we should defer to legislative judgments, right? Right, but that's because if you look at the complaint in Goldstein, it was a very long, detailed complaint, but basically everything it was saying is that this is a bad project. This isn't going to produce as much affordable housing as they say. So the idea is that we should defer to legislative judgments about what is public use, that we shouldn't say, well, the town has too many parks, so it's a bad idea to have another park. Right. If the allegation is that that's actually not the purpose of the town, the legislature doesn't get a difference on that question. That's right. And I think that this would be a different case if, for instance, there were a list of three properties that might be acquired for a park, and Parks and Rec was very seriously considering all of them, and then they decided to take my client's property. But Goldstein says that our power is limited where the exercise of the eminent domain power is rationally related to a conceivable public purpose. That's very broad. I think anybody would have to agree that that could be a dangerous proposition, and that's what you're arguing. But isn't this a conceivable public purpose? It's a downtown park, and we have pocket parks all over Manhattan. Absolutely, Your Honor. But Goldstein then goes on to recognize these pretext claims, and then it says, we won't allow this to proceed based on the exact language was mere suspicion. So it was really a sufficiency of the allegations, rejection of pretext. Well, they said mere suspicion that the true purpose of the Atlantic Yards development was just to enrich Bruce Ratner. I mean, that's a pretty far-fetched allegation, and there was nothing in the complaint to support that. So it makes sense that under Iqbal and Twombly that wasn't enough to get past a motion to dismiss. But that's not what we have here. Here, the pretext, which you convincingly argue exists, is to avoid the construction of a hardware store. But the public use is undoubtedly a public use that is widely recognized as a valid exercise of eminent domain. People are going to use the park. It's a passive park. They'll walk their dogs. They'll watch the sunset. This is the use of the park. Are you saying they're not going to build a park? That's not what I'm saying, Your Honor. I think that Kelo and Goldstein both recognize that purpose matters, even if the properties ultimately turn to the use that the government says it's going to be turned to. And I don't think that there's any way to hold contrary without creating this big split of authority. So you're saying if the town decided to condemn the houses of, like, five people that they just hated who lived in the town and demolished their houses and put public parks on top of them, even though there are parks there, we shouldn't avoid looking at the fact that it was all motivated by animus. That's exactly right, Your Honor. And I've seen this happen. I've seen people who wouldn't sell to developers being threatened with having parks put on their houses. And we've litigated those cases. And what do you think is really the town is thinking here? So is it the way Judge Jacobs characterized it, that they don't want this hardware store in the town? Is it animus specifically at the Brickbins? Is it the failure to pay? There's that allegation that they didn't pay extra money to Martin Finnegan. What do you think the actual animus is? So we don't know what's in their deepest heart, and I don't think we need to allege that. There's a former council member who said that this is in the complaint. She thinks it's just because they're not part of the Old Boys Club. They're not from this part of Long Island. Maybe it's that. Maybe it's something else. But in all of these cases, the courts have not been probing that deeply. So you're saying that doesn't matter, because you think that as long as the purpose is trying to prevent a lawful use of the private property, then that's an invalid purpose and it's a taking? That's right. So if the town has a genuine belief that a big hardware store would be bad for the downtown, Or they should really hate these specific people. One of those seems more public spirit than the other, but you're saying they both should be invalid purposes. That's correct. Thank you. Okay. Thank you very much, Mr. Redford. You reserved time for rebuttal, but we'll turn to the appellee. Ms. Walsh. Good morning, and may it please the court. Brianna Walsh of Pillsbury, Winthrop, Sean Pittman on behalf of the town of Southhold. The district court's adherence to this court's precedent was not radical. It was required. And as this court held in Goldstein v. Pataki, also on a motion to dismiss, the court need not go further and explore the motives of the legislature where the project is a classic example of a taking for public use. It's undisputed here that the take- But that's only if we think that it actually is being taken for public use. So isn't it a different kind of case if the allegation, at least a plausible allegation, is that that's not the genuine purpose? I don't think so, Your Honor. I think here at the- So it doesn't matter what the real purpose is. So in my example, you know, there's this back and forth in the briefs about an invidious motivation for a taking, right, a discriminatory one. And so if the town says, we don't want African Americans and Jews in our town, and so we're just going to take all their houses and build public parks on them to drive them out of town. And they actually do build the public parks. Would that be a taking for public use? I understand you're saying in your briefs there's other provisions that might deal with that, but putting that aside, let's say all those are waived. Is it a taking for public use? If the true purpose is we don't want African Americans or Jews living in our town, and so we're going to take all their property. So I think we do raise the issue of there being other forms of relief. Yeah, but I'm asking about the meaning of the takings clause. Within the takings clause, I think the important distinction is purpose and motive. And here, they don't dispute that the purpose is for a public park in the town of South Hole. So then your position is that actually that would be a valid taking of the takings clause. If we don't want Jews in our town, we're going to seize all their houses and put parks on top of them. That would be a taking for public use. I think under this court's precedent, where we don't go and explore the subjective motivation of every legislature who was involved, and where the real recourse, in the event that the legislature was doing that, would be the political process. It's a different situation here. The recourse would be the political process. Let's say there are only five Jews in the town, and they've just seized their houses and driven them out of town. How are they going to have recourse to the political process against that? Under this court and the Supreme Court's case law, the review is whether or not there's a public purpose. Goldstein was very clear on that point. I guess in my hypothetical, it's true that they're building a park, but the real purpose, the real aim of the town, is to drive out the Jewish residents. So what is the purpose? Isn't there a question about what the real purpose is in that hypothetical? I think that goes to motive. And here the allegation is that their motivation was they didn't want a Okay, so then you're saying if actually what they really wanted to do was to prevent the building of the hardware store, that's a public purpose. The public purpose is for a park. It was in the town's draft comprehensive plan and prior land use studies in the town that a public park was necessary. The application was never approved for the Brinkman's property. Okay, but you're saying that the true purpose was they really wanted the park. That's correct. But I guess I'm saying if we had, say, if some member of the town said, I really care about a park. I don't want there to be a park in this town. I just really hate the Brinkman's and don't want them to build their store. And if I need to put a park there to take their property, I'm going to do that. Would that be a different case? I think that's still the type of conduct, the type of allegation that this court and courts generally don't go into because it's not the court's role to look at the subjective intent of the legislature. And it's a nearly impossible task to do so if that was the standard in every case. So you're saying that the legislature can take any property, and as long as they put a park on top of it, they can take anyone's property, even if it's based on an invidious motivation. Under the current case law, which is to determine whether or not the taking is for a public purpose, which there's no dispute that it is here, and they don't dispute that the town actually is going to put a park there. Is that a problem, though? So if you said maybe you could answer my question about whether the town could have done something else to stop the construction, like changing the zoning laws or not approving the site plan. But on the assumption that actually they didn't have a lawful means to stop the construction short of using the eminent domain power, isn't it an abuse of the eminent domain power to circumvent all those limitations of the powers of the town just to take somebody's property? No, Your Honor. The application was never approved, and the application was pending when the town commenced condemnation proceedings. Since that time, the Brinkmans had an Article 78 proceeding in state court against the town. They voluntarily discontinued that action. The condemnation proceeding went through, and title is vested in the town for use as a public park, which is inalienable title. So the application was still pending. The town determined that the property was required for the public use as a park. But the allegation, this is not a motion to dismiss, so the allegation is actually they didn't really want a park. They just hated the Brinkmans or hated their store or something. But you're saying that doesn't matter, right? No, Your Honor, and I think in both... You know it doesn't matter. You are saying that and know it... I don't think that's something that matters to the courts in reviewing these where the purpose is a public use. And the district court addressed the complaints raised by plaintiffs, and its difficulties obtaining a permit, which I think is a widespread issue with anyone coordinating with municipalities in obtaining permits, the lack of knowledge about a plan to build a park, and a statement that nothing would be built there. And the district court said, it's nothing more than the town's desire to leave the property taken. That's what the district court said, but of course it wasn't a motion to dismiss. And so if you make every inference in favor of the plaintiffs, it's possible that you could infer that the town really just wanted to stop the Brickmans from using their property to build a store and didn't really care about the park, right? That's a possible conclusion one could draw from those allegations if you credit them, right? And the court did credit them and found that they didn't amount to the allegations to warrant a further... Because it doesn't matter if that's the true purpose. That's your position. That's correct. If the town is taking it because they don't like Jews, or they don't like the family, or they don't like hardware stores or whatever, they're allowed to take it. As long as they're putting the park on top. And under this court's precedent in Goldstein, that is the review that was set out. And Goldstein extensively discussed the process... Well, can I ask, so we have all these other cases. There's this back and forth in the briefs where the plaintiffs cite these state cases and you talk about, well, those cases aren't binding. The district court said that, so it's not binding. Well, okay. I don't know if it's binding or not, but those cases stand for the proposition that if what the governmental authority is doing is taking the property because they want to stop a lawful use of somebody's private property that they don't like, that's bad faith and it's invalid. What's wrong with that principle? So why isn't that persuasive? I don't think that's consistent with this court's precedent, Supreme Court precedent. And because of that, unless this court is... I'm not asking about the precedent. So the plaintiffs laid out this argument that says, you know, there needs to be a kind of anti-circumvention rationale. You can't use the eminent domain power to accomplish all sorts of abuses that other sources of law prevent the government from accomplishing directly. That seems like a reasonable argument. I'm asking what's wrong with that argument. Because it would require the courts to look into the mechanics of a taking in every instance. And that's not how... Why would it be every instance? I mean, we have a pleading standard that has to be plausible. It has to be fact-supporting. And if it's just conclusory facts, we would dismiss that complaint, right? Not under the arguments that the Brinkmans raise here. They argue that in every instance... I mean, in this case, if the town had planned a park in that location for 30 years and then seized it at the end of a whole process where they were It's easy to say, well, it's not plausible that the only reason they're doing this is to stop the Brinkmans, right? That's not what's happening. That's not what the allegations are here. No, that's not what the allegations are here. Right. So you could say there would be cases where it would be implausible. But why isn't this the case that's plausible? I mean, in Goldstein, we even said there might be fact patterns where it's plausible that the government has an ulterior motive. And in Goldstein, I think the facts are much more sympathetic. The plaintiffs there allege that the developer who was well-connected with the government that was approving it was going to have a benefit and make a ton of money off of that development. There is no allegation here that comes close to that. At best, they state that someone stated that there would be nothing developed on the park, which is consistent with the fact that it's going to be a passive-use park. Well, at that time, when he said, I'm not going to let anything build there, there wasn't a plan for a park, right? The park was called for by the Draft Town Comprehensive Plan and prior land use studies of the Hamlet, and that's at Appendix 1094. What is a passive-use park? I mean, aren't all parks passive-use? Yes, Your Honor. They're not building it up and adding a ton. So it's not going to have a carousel or a zoo or something like that. Right. It goes toward what you mentioned earlier, where people walk their dogs and are able to access it, but it's not a highly-developed park like some of the ones that we have here. I mean, you're trying to tell us that the park was a long-planned thing. But, again, we're on a motion to dismiss, right? And so there are allegations that the town wasn't planning the park. They had these list of sites that would be appropriate for a park. It did not include the site, right? They only came up with a park at the last minute when they didn't have any other means for stopping the Brinkmans from building their store. So if we credit them, so if it makes a difference what you're saying, that actually it was a genuine intention to build a park that was longstanding, then shouldn't this case not be decided on a motion to dismiss? Shouldn't the district court resolve that fact to dispute about what the actual purpose was? I don't think it makes a difference. So it doesn't make a difference. So even if the town never intended to build a park until the very last minute and only decided to build a park because they wanted to stop the construction of Brinkman's store, still fine. That's correct. That's not the fact that we have here, but under the Supreme Court case law. So all these things you're saying about how they have a long plan to build a park and the town plan called for it, whatever, that's irrelevant. The mere fact is they said they're building a park, and that's the end of the analysis. That's correct. Was Article 78 available to the plaintiffs to challenge this ruling as arbitrary? So the Article 78 that was brought was in connection with the moratorium. The Brinkman's admittedly elected not to challenge the findings and determination. So they brought it with respect to the moratorium on the building of anything, and it was quite localized to where the Brinkman's were going to build their box store. That's correct. So they brought in Article 78. Could they have brought in Article 78 challenging the exercise of eminent domain and thereby obviate raising federal constitutional questions? They could have brought within 30 days of the findings and determination that the land was required for use as a public park a challenge to that determination. They never challenged that determination, and the town took title to the land for use as a public park. Were they required to do that in order to bring the 1983 action? They're not required to challenge it. I understand. Maybe they should have brought a state action, right? But we've said that you don't have to bring a state action in order to bring a 1983 action, right? So it's not available to us to say, well, because you didn't challenge it in an Article 78 proceeding, you lose your 1983 claim. We have to consider the constitutional question in this case, right? What they did waive was their ability to challenge the public use determination. So the public use determination was for use as a park. I'm sorry. So you're saying that because they didn't challenge that in the state court proceeding, we are bound to say that this is necessarily a public use? I don't think it's disputed that a park is a public use. It's disputed as to what the genuine purpose of the real purpose of the town was, right? Which their argument rests on the motive, but not the purpose. The purpose here isn't in dispute. And the purpose has been universally recognized as a taking for public use where it's a park since Rindge in 1923. But just to go back to the state proceedings, there's no exhaustion requirement for 1983 claim, is there? No. But they have also voluntarily discontinued their challenge to the moratorium. They did not challenge the condemnation findings and determinations. But what is that? They're not challenging the moratorium because it doesn't matter anymore. The town took their property rights. They hadn't at that point. They had 30 days to challenge the findings and determinations. And while this case was briefed, I think shortly before our brief went in, the town actually took title and the condemnation proceeding wrapped up. Title is vested in the town. They can't alienate the property. They can't transfer it to someone else for some other purpose. They took title to it for use as a park, which is exactly what they said they were doing. Okay. Thank you very much. Ms. Walsh, we'll turn back to Mr. Bedford on rebuttal. Thank you. Just a few points, Your Honor. We are not arguing that close scrutiny of the mechanics of taking is required in every instance. Iqbal and Twombly apply. And as this court held in Goldstein, mere suspicion is not enough. But we go far beyond that. And there's no contention that our allegations are sufficient, if our legal theory is correct. We're really just arguing about the scope of the pretext doctrine. For eminent domain, does the public purpose have to be the only purpose? No, it has to be the primary purpose. Courts have used slightly different language. The primary purpose for the use of the land. That's correct. And the primary purpose here for the use of the land seems to be to make it a park. No, Your Honor. The primary purpose, we've alleged, the primary purpose is to stop the Brinkman's from opening their hardware store. If this were really about a park. And if that is the law, and it may be, then one would have to examine the intent of all the people on the, or at least the people who constituted the majority, who argued for condemning the land under eminent domain. And there may very well be people on the town board who would vote for any park. They just don't think there are enough parks. The 900 parks, they would be good. I understand. And this would be good too. Only, that's true, Your Honor. Only if the pretext is sufficiently alleged. And that's not an easy thing to do. We don't see these cases very often. But we have overwhelming evidence of pretext here. And I don't think the court needs to opine about where exactly the line is for clearing Iqbal and Twombly, because it's not that common. We know that mere suspicion under Goldstein isn't enough. We know that this is enough, because this is more than was in all of those other state cases that we've cited. And hopefully, if this court simply joins the unanimous consensus of all the other courts to consider these questions, this won't happen that much. I guess you would say also that if, in fact, it turned out that the members of town council all would vote for a park, no matter what, because they love parks, you'd lose on the merits, right? Absolutely. This is a motion to dismiss. This is a motion to dismiss. So the allegation is that that's not their intention. But if it turned out that they genuinely want to build a park, and that was the actual reason for the taking, then you'd lose. That's right, Your Honor. Now, the argument that unless you win, towns will be able to go around condemning everybody's private property for frivolous or ulterior purposes. We want this house because they have ugly lawn decorations. We want that house because they're Romanians. That could be stopped under Article 78, couldn't it? Because it would be arbitrary by definition. And it would also violate the Public Use Clause, Your Honor. And I think this court recognized that those claims exist. No, I certainly understand that's your argument. But I think that the availability to challenge arbitrary and capricious conduct under state law certainly drains the life out of the argument that towns will just be able to go around doing all these arbitrary things based on their prejudices and hatreds and preferences that don't amount to anything. Well, Your Honor, I don't think that the scope of federal constitutional rights is reduced simply because there might be alternative state remedies. That's true enough. On the other hand, I'm just questioning whether- As a practical matter. Whether the practical consequence that you were arguing is realistic. So, Your Honor, I think that the practical issue with that is, one, in Article 78 challenge, you have 30 days. You have to do it after the legislative finding of public use, not after there's a condemnation. So there can be a legislative finding. You don't know if the town's ever going to go ahead with it. You have to hire a lawyer who's not on a contingency because it's not a just compensation case. And you have to fight that just in case they go ahead with it down the road at some point. Well, fighting city hall has always been expensive. I agree, Your Honor. Why, in this case, the Brinkman's didn't challenge the determination, the public use determination in state court or state proceedings? Your Honor, they preferred the federal forum. They had only 30 days to challenge it and didn't know for certain if they were going to go ahead with it at that time. The town sat on that determination for quite some time before they eventually moved. Okay. Thank you. Thank you very much, Mr. Redfern. The case is submitted.